1                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
2

3

4  Regional Transit Authority)
   Transit Services, Inc.,   )
5            Plaintiff,      )
                             )
6                            )
   vs.                       )     Case No. 11CV40222-FDS
7                            )
                             )
8  Amalgamated Transit Union,)
   Local 22,                 )
9            Defendant.      )

10

11  BEFORE:   The Honorable F. Dennis Saylor, IV

12

13                      Motion Hearing

14

15

16                          United States District Court
                            Courtroom No. 2
17                          595 Main Street
                            Worcester, Massachusetts
18                          February 13, 2012

19

20

21

22
                   Marianne Kusa-Ryll, RDR, CRR
23                    Official Court Reporter
                   United States District Court
24                595 Main Street, Room 514A
                     Worcester, MA 01608-2093
25              508-929-3399 justicehill@aol.com
              Mechanical Steno - Transcript by Computer

```
1   APPEARANCES:

2   Mirick, O'Connell, DeMallie & Lougee, LLP
    Kimberly A. Rozak, Esquire
3   Michael P. Murphy, Esquire
    100 Front Street
4   Worcester, Massachusetts 01608-1477
    on behalf of the Plaintiff
5
    Law Office of Gary H. Goldberg
6   Gary H. Goldberg, Esquire
    120 Main Street
7   Third Floor
    Worcester, Massachusetts 01608
8   on behalf of the Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>E X H I B I T S</u>

| <u>Exhibit No.</u> | | <u>Page</u> |
| --- | --- | --- |
| 1 | June 14, 2003 | 23 |

1           P R O C E E D I N G S

2                (The following proceedings were held in open

3      court before the Honorable F. Dennis Saylor, IV, United

4      States District Judge, United States District Court,

5      District of Massachusetts, at the Donohue Federal

6      Building & United States Courthouse, 595 Main Street,

14:24:51  7    Worcester, Massachusetts, on February 13, 2012.)

14:24:51  8                THE CLERK:  All rise.

14:24:52  9                Court is now open.  You may be seated.

14:24:56  10               Case No. 11-40222, Regional Transit

14:25:05  11   Authority versus Amalgamated Transit Union, Worcester

14:25:08  12   Local 22.

14:25:09  13               Counsel, please note your appearance for the

14:25:10  14   record.

14:25:10  15               MS. ROZAK:  Good afternoon, your Honor.  My

14:25:12  16   name is Kimberly Rozak.  I'm here on behalf of

14:25:16  17   Plaintiff, RTA Transit Services, Inc., and along with me

14:25:19  18   is Attorney Michael Murphy.  We're from Mirick,

14:25:19  19   O'Connell.

14:25:22  20               THE COURT:  All right.  Good afternoon.

14:25:22  21               MR. GOLDBERG:  Good afternoon, Judge.  Gary

14:25:23  22   Goldberg on behalf of the defendant, Local 22.

14:25:26  23               THE COURT:  All right.  Good afternoon.

14:25:29  24               All right.  This is a hearing on the Union's

14:25:35  25   motion to dismiss.

14:25:36  1          Mr. Goldberg, I'll hear from you first.

14:25:40  2          MR. GOLDBERG:  Thank you, your Honor.

14:25:41  3          The Union finds itself in a rather unusual

14:25:48  4  position today.  Typically, we're here because we have

14:25:53  5  been accused of not adhering to the contract, and the

14:25:58  6  Court is admonishing that we should have gone to

14:26:02  7  arbitration.

14:26:03  8          Today, the opposite has occurred, and we're

14:26:05  9  trying to go to arbitration, and the employer is

14:26:08  10  attempting to block us from doing so.  We're seeking

14:26:11  11  this declaratory relief permanently barring the Union

14:26:15  12  from bringing forth this grievance to arbitration, and

14:26:19  13  they're arguing that the contract does not provide for

14:26:22  14  such access to arbitration for demotions of its members.

14:26:27  15  And the relevant clause within the contract includes a

14:26:31  16  discipline clause where it's defined as discipline to

14:26:36  17  include written warnings, suspensions, and discharge.

14:26:38  18          The motion is not defined by the contract,

14:26:44  19  and it is for that very reason that the Union contends

14:26:48  20  that the RTA has exceeded its authority and has filed

14:26:52  21  its grievance under the collective bargaining agreement.

14:26:56  22          During the investigation of this matter by

14:26:57  23  the RTA, Mr. Rossi, who is the individual who has been

14:27:02  24  demoted, was told that all infractions are under

14:27:06  25  investigation leading to steps of progressive discipline

14:27:09  1    up to and including discharge from service.

14:27:12  2          After they completed their investigation,

14:27:15  3    they demoted Mr. Rossi in lieu of discharge due to his

14:27:19  4    length of service.  However, as a result of that

14:27:23  5    demotion, his seniority, his bidding rights and even

14:27:28  6    pension rights have all been negatively impacted.

14:27:31  7    Hence, the reasons why we believe that arbitration is

14:27:35  8    the appropriate remedy.

14:27:37  9          The grievance procedure in this case is a

14:27:40  10   broad one, and it's important to the outcome of this

14:27:42  11   case.  It -- it applies to all disputes between the

14:27:47  12   parties; and by having this broad arbitration clause, it

14:27:51  13   raises this presumption of arbitrability.

14:27:55  14          THE COURT:  Let me stop there.

14:28:02  15          It says, "The grievance procedure shall

14:28:04  16   apply to all disputes arising between the Union and the

14:28:07  17   Company," et cetera.

14:28:10  18          Does that mean literally all disputes or all

14:28:15  19   disputes arising under the collective bargaining

14:28:17  20   agreement?

14:28:18  21          MR. GOLDBERG:  I think it -- it does not

14:28:21  22   require, as far as the Union is concerned, that there be

14:28:24  23   a specific provision dealing within the contract that it

14:28:30  24   allows for all disputes that would arise between the

14:28:32  25   parties.

14:28:33  1          THE COURT:  Okay.

14:28:39  2          MR. GOLDBERG:  The issue of this presumption

14:28:41  3  of arbitrability, as relies back to the broad

14:28:45  4  arbitration clause, the courts have indicated that there

14:28:49  5  is two ways for the employer to demonstrate that this

14:28:55  6  presumption of arbitrability should be set aside.

14:28:59  7          One is whether or not there is specific

14:29:02  8  language within the contract that excludes it, this

14:29:07  9  particular matter, and there is a generic demand of

14:29:12 10  rights clause, which simply preserves any rights not

14:29:16 11  modified specifically under the agreement is reserved to

14:29:19 12  the employer.

14:29:20 13          THE COURT:  Well, again, reading those two

14:29:22 14  together, I'm struggling with this because it's not the

14:29:28 15  clearest most coherent document.  You say anything is

14:29:35 16  covered -- any dispute is covered by the grievance

14:29:37 17  procedure, which suggests that management hasn't really

14:29:41 18  reserved any rights at all, right?  In other words, what

14:29:45 19  does that phrase mean if all disputes arising between a

14:29:50 20  union or a union member and the company are covered in

14:29:55 21  the grievance procedure?

14:29:56 22          MR. GOLDBERG:  For example, you know, if

14:29:57 23  there is issues involving, you know, things that are

14:30:01 24  traditionally reserved to the employer, whether it be in

14:30:06 25  terms of the operation of their business that is not

14:30:09  1    specifically set aside within the contract, arguably

14:30:14  2    that would be reserved to management within the

14:30:17  3    management rights clause.  Here we have a situation

14:30:19  4    involving an individual employee who has been demoted.

14:30:24  5                THE COURT:  In other words, let's say that

14:30:29  6    management decided to paint all of the buses bright

14:30:33  7    pink, and the Union said, good Lord, I don't want to

14:30:36  8    drive a bright pink bus; they're hideous.  I'm not

14:30:42  9    trying to use a silly example here to illustrate the

14:30:45  10   point.  That might be a dispute arising between the

14:30:47  11   Union and the Company.  The workers are upset at the

14:30:50  12   ugly color of the buses.

14:30:53  13               Would that be an arbitrable dispute or would

14:30:56  14   that come within the management rights clause?

14:30:58  15               MR. GOLDBERG:  I do not believe that that

14:31:00  16   would be an arbitrable dispute.

14:31:02  17               THE COURT:  And the reason it wouldn't is

14:31:03  18   because it's not covered by the CBA, right?

14:31:05  19               Now, there is nothing in the CBA that says,

14:31:07  20   you know, the Union has a say in what color the buses

14:31:10  21   ought to be.

14:31:11  22               MR. GOLDBERG:  Right.  It doesn't -- it

14:31:12  23   doesn't directly impact the terms and conditions of

14:31:16  24   their employment.

14:31:16  25               THE COURT:  You know, in a way it does --

14:31:17   1         MR. GOLDBERG: Well --

14:31:18   2         THE COURT: -- but I mean everything

14:31:19   3 arguably impacts --

14:31:20   4         MR. GOLDBERG: Right.

14:31:21   5         THE COURT: -- conditions of employment.

14:31:23   6 And the reason I'm asking that question is it sort of

14:31:25   7 backs into discipline. You know, the $64,000 question

14:31:29   8 is is discipline only consist of written warnings,

14:31:32   9 suspensions or terminations, or other actions against an

14:31:35 10 employee, and -- in other words, if -- if all that is

14:31:43 11 arbitrable is that covered by the CBA, and the CBA says

14:31:47 12 discipline is only these three things, then a fourth

14:31:51 13 thing arguably is not covered by the CBA, right?

14:31:54 14         MR. GOLDBERG: I don't think that that would

14:31:56 15 be true.

14:31:56 16         THE COURT: Okay. Walk me through that

14:31:58 17 then.

14:31:58 18         MR. GOLDBERG: The argument would be that

14:32:00 19 they have exceeded their authority within that clause.

14:32:04 20 The fact that they cannot issue discipline, the demotion

14:32:07 21 as a discipline, they've exceeded their authority under

14:32:11 22 the agreement. It has not been specifically reserved in

14:32:15 23 the managing rights clause, and it's subject to whether

14:32:19 24 or not that -- to arbitration whether or not they have,

14:32:22 25 in fact, exceeded that -- that authority. I mean,

14:32:24   1   if -- if that wasn't the case then any time that the

14:32:29   2   Union claimed that the employer has exceeded their

14:32:31   3   authority would never get resolved to arbitration.

14:32:36   4           So it does involve the interpretation of

14:32:39   5   that agreement as to whether or not the discipline

14:32:41   6   includes that level of demotion; and if it does not,

14:32:45   7   then whether or not that the company is still warranted

14:32:48   8   in demoting him, or whether they have exceeded their

14:32:51   9   authority under the agreement.

14:32:53  10           THE COURT:  So you're saying that the only

14:32:54  11   forms of discipline are these three things?

14:32:56  12           MR. GOLDBERG:  That's what the -- well,

14:32:58  13   there is a verbal warning, and that doesn't rise to the

14:33:00  14   level of discipline that has been identified.  It

14:33:03  15   doesn't go into the personnel file.

14:33:05  16           THE COURT:  Even if paradoxically that would

14:33:08  17   mean employees might be worse off, rather than being

14:33:10  18   demoted, they have to be fired, because that's not one

14:33:13  19   of the options?

14:33:13  20           MR. GOLDBERG:  There is language in the

14:33:15  21   agreement that talks about the process dealing with

14:33:18  22   someone who gets promoted from job A to job B; and if

14:33:22  23   they don't work out, in the opinion of the employer,

14:33:25  24   they would get back to their old job.  So in that sense,

14:33:29  25   the word "demotion," although that word is not used,

14:33:32  1  it's considered within the agreement, and that has been

14:33:35  2  the only place where it has been considered within the

14:33:39  3  agreement.

14:33:39  4            THE COURT:  Okay.

14:33:42  5            MR. GOLDBERG:  So, the -- the premise where

14:33:45  6  I was at was the fact that if this presumption of

14:33:49  7  arbitrability exists dealing with this broad arbitration

14:33:54  8  clause, the company has the burden then to demonstrate

14:33:57  9  that there is some specific language that would require

14:34:01  10 this carveout, or this reservation, which there is no

14:34:06  11 such language.

14:34:07  12           The actual case that they relied upon, there

14:34:09  13 was a case in reference to Trap, the Trap case, which

14:34:15  14 they cited in their brief supporting their argument.  In

14:34:19  15 that particular case, the Third Circuit had indicated

14:34:22  16 that the managers rights clause there allowed for

14:34:27  17 reservation of rights to be associated with discharge

14:34:31  18 and demotion as related back to qualifications and

14:34:35  19 performance.  And that would not be subject to the

14:34:38  20 arbitration provision.

14:34:39  21           And the -- that Court went on to say that

14:34:42  22 this is atypical, that typically if there is a broad

14:34:47  23 management rights clause -- a broad grievance procedure

14:34:51  24 and a generic manager rights clause, then such a

14:34:56  25 reservation would not exist, and the matter would be

14:34:58  1   going to arbitration.

14:34:59  2          The second way for them to argue that the

14:35:02  3   presumption of arbitrability should go away is that

14:35:07  4   there's got to be some language that is the most

14:35:13  5   forceful purpose is the way that the courts referred to

14:35:16  6   it.  The most forceful purpose that to exclude this from

14:35:21  7   arbitration.  And there is none.  This is simply a

14:35:24  8   matter of interpretation of the contract as to whether

14:35:26  9   they exceeded their authority.

14:35:28  10         And the -- the Supreme Court in -- in the

14:35:33  11  Warrior and Gulf case going back to 1960, you know,

14:35:36  12  addressed this issue specifically on point and cautioned

14:35:40  13  the lower courts that they should view with suspicion an

14:35:45  14  attempt to persuade it to become entangled in the

14:35:49  15  construction of the substantive provisions of the labor

14:35:52  16  agreement even through back door of interpreting the

14:35:56  17  arbitration clause where the alternative is to use the

14:35:59  18  services of an arbitrator.

14:36:01  19         So, we have the presumption of

14:36:05  20  arbitrability.  It has not gone away.  There's no

14:36:10  21  specific language that would exclude it, and there's no

14:36:13  22  purposeful or forceful action or evidence that the

14:36:17  23  employer can offer.  But moreover, there is a provision

14:36:21  24  within the arbitration clause that allows for the

14:36:24  25  parties to either choose to go to AAA or to go to JAMS.

14:36:29 1 And the JAMS arbitration provisions, which this

14:36:33 2 particular arbitration is not before, allows for the

14:36:36 3 rules to include that that arbitrator would determine

14:36:39 4 arbitrability of any issues given to them.

14:36:42 5      THE COURT:  I have to say that that argument

14:36:45 6 didn't move me particularly.  In other words, this

14:36:47 7 gateway or threshold question of who decides whether the

14:36:50 8 claim is arbitrable, I -- I don't see the CBA as, you

14:36:58 9 know, adopting the rules of JAMS such that it's clear

14:37:01 10 that the arbitrator is the one who makes that call.

14:37:07 11      In fact, I thought the way this works is you

14:37:14 12 go to AAA arbitration; and if, as an alternative, if the

14:37:20 13 parties agree, you can go to JAMS.  So, JAMS is the

14:37:22 14 second tier, so to speak.

14:37:23 15      MR. GOLDBERG:  That's correct.  And the

14:37:25 16 argument goes that since -- to demonstrate the fact that

14:37:29 17 the presumption of arbitrability is that strong, the

14:37:33 18 Union is also offering that additional section to show

14:37:38 19 that the parties in some fashion had agreed to allow,

14:37:42 20 under the agreement, to allow these matters to go to

14:37:45 21 arbitration, even issues of arbitrability.

14:37:48 22      So in the absence of any language that they

14:37:50 23 can show that carves out those exceptions, the Union is

14:37:54 24 offering additional language to show that the parties

14:37:57 25 had agreed, at least in certain instances, to allow

14:38:01 1 arbitrability to be decided by the arbitrator.

14:38:03 2 And we would ask the Court to dismiss the

14:38:10 3 complaint and allow the case to go to arbitration, which

14:38:13 4 is now put on the schedule for sometime in March.

14:38:17 5 THE COURT: All right. Ms. Rozak.

14:38:18 6 MR. GOLDBERG: Thank you, Judge.

14:38:20 7 MS. ROZAK: Thank you, your Honor.

14:38:21 8 Mr. Goldberg, in the Union's first argument,

14:38:26 9 is that the arbitration clause is broad so, therefore,

14:38:29 10 there's a presumption of arbitrability, and it can be

14:38:32 11 viewed two ways: One, I think it could be argued quite

14:38:36 12 easily and readily that the language is not broad

14:38:40 13 because although Mr. Goldberg answered your question

14:38:42 14 that any dispute can be brought forward to arbitration,

14:38:45 15 I think the contract is quite clear on its face, and it

14:38:48 16 does not say that. Although Article III(A) does begin

14:38:52 17 with language that says all disputes arising between the

14:38:56 18 Union and the company may go to arbitration. It's

14:39:00 19 clearly modified by III(C), which says that -- and we've

14:39:04 20 cited this in our papers -- the specific section of the

14:39:07 21 agreement alleged to have been violated must be put in

14:39:10 22 writing. So to the extent that he, Mr. Goldberg, is

14:39:14 23 asserting that the arbitration language of the clause is

14:39:19 24 broad, I say it has been narrowed by the contract in and

14:39:24 25 of itself. You can't just read III(A) and skip III(C).

14:39:27  1    The rules of contract interpretation apply here and are

14:39:29  2    the overarching rules.  And my brother has cited to that

14:39:32  3    in his opposition that we aren't just abandoning the

14:39:36  4    rules of contract interpretation here as we argue this

14:39:39  5    today.  Those are the primary rules by which we will

14:39:41  6    interpret the collective bargaining agreement as well.

14:39:44  7             So I say that it's narrow because it does

14:39:46  8    require the contract to be cited, and the Union has

14:39:48  9    cited the collective bargaining agreement, and they

14:39:50  10   cited the discipline language.  And so the discipline

14:39:54  11   language is what is at issue.  That's -- they cited it

14:39:56  12   in their grievance, and then they raise it again in

14:40:00  13   their demand for arbitration.  They say, discipline, and

14:40:02  14   in parens, demotion, not administered according to the

14:40:06  15   CBA.  Their argument has been all along that the

14:40:09  16   demotion is disciplinary in nature, and they can grieve

14:40:12  17   that under the collective bargaining agreement.  They

14:40:15  18   can't because the language in the discipline section

14:40:17  19   under II(A), as you said, your Honor, defines discipline

14:40:21  20   that is subject to the grievance and arbitration

14:40:24  21   proceeding as "written warnings, suspensions and

14:40:28  22   terminations."

14:40:28  23            So my response to the broad arbitration

14:40:32  24   clause is even if you were to determine that the

14:40:35  25   grievance and arbitration language is broad, the

14:40:39 1 lang -- the cases that I cited, the Trap case and then

14:40:42 2 the -- the *United Steelworkers case versus Rohm*.  Both

14:40:47 3 of those have determined that even though there may be a

14:40:51 4 broad arbitration clause, the claim that's being brought

14:40:55 5 forward to arbitration still has to be grounded on the

14:40:58 6 collective bargaining agreement.  And I submit to you,

14:41:02 7 your Honor, that their claim, which is that the

14:41:03 8 discipline here, the demotion, was not in accordance

14:41:07 9 with the contract is not subject to being arbitrated.

14:41:11 10         Now, Mr. Goldberg makes a second argument,

14:41:15 11 which he just argued now, and I -- it appears in his

14:41:19 12 papers as well, which I -- I'll admit I didn't quite

14:41:22 13 understand what he was getting at, but I do now.  He's

14:41:25 14 trying to say that because the management rights clause

14:41:28 15 at I(A) is broad, that the Union has unfettered

14:41:32 16 discretion to bring forward claims and say that

14:41:37 17 the -- they're really challenging the management rights

14:41:40 18 clause and how it's being interpreted.

14:41:42 19         First of all, again, we're limited by the

14:41:45 20 papers that we have here in that the Union hasn't

14:41:48 21 challenged the collective -- I mean hasn't challenged

14:41:52 22 the management rights clause.  That's not part of their

14:41:55 23 grievance and it's not part of their demand for

14:41:57 24 arbitration.  But this is not a situation where the

14:41:59 25 Union is trying to say the management rights clause

14:42:03 1 doesn't allow you to do what you did. You overstepped

14:42:06 2 your bounds, RTA, or as the Union's written brief says,

14:42:11 3 that we're trying to somehow argue that the collective

14:42:15 4 bargaining agreement's grievance and arbitration

14:42:18 5 language trumps the management rights clause. That's

14:42:21 6 not the case.

14:42:22 7 The management rights clause, as RTA is

14:42:26 8 relying on it in its papers, is solely to provide you,

14:42:30 9 explain to you, what is the source of its right to

14:42:33 10 demote. Because the contract otherwise doesn't say

14:42:35 11 anything about demotion. And my brother has raised the

14:42:38 12 point about well, there's some peripheral language

14:42:41 13 related to promotions. So you can sort of, you know,

14:42:44 14 infer from that that demotions are mentioned. They're

14:42:47 15 not. Demotions are not covered by the collective

14:42:50 16 bargaining agreement. So the source of RTA's right to

14:42:54 17 demote is the management rights clause, but we're not --

14:42:56 18 I'm not asking you to interpret that. I'm just simply

14:43:00 19 saying that's there for you to look at.

14:43:02 20 What you need to decide is whether or not

14:43:03 21 the parties have, under the discipline language in

14:43:07 22 II(A), agreed to have the Union challenge demotions, and

14:43:13 23 it hasn't, your Honor. It's a pretty straightforward

14:43:16 24 contract interpretation matter. The principles of

14:43:19 25 contract interpretation apply, and the clean -- the

14:43:22  1  clear and clean language, unambiguous language of the

14:43:26  2  contact, is that if you're challenging a discipline

14:43:28  3  matter, Union, it has got to be one that the parties

14:43:31  4  agreed upon as discipline.  And again, it's limited to

14:43:35  5  the written warnings, the suspensions, and the

14:43:37  6  terminations.

14:43:38  7          Just to briefly touch on the Union's JAMS

14:43:44  8  argument, I think your Honor has raised the points that

14:43:46  9  we raised in our brief and opposition to the motion to

14:43:50  10  dismiss, which is we're not talking about a JAMS

14:43:53  11  situation here because, as you pointed out, it's a

14:43:57  12  second-tier agreement.  So it requires that the parties

14:44:01  13  not only bypass mutual selection of an arbitrator, but

14:44:06  14  also bypass selection of an arbitrator through the AAA

14:44:09  15  process.  So we haven't gotten to JAMS yet.  But even if

14:44:12  16  we did get to JAMS, that would require a mutual

14:44:15  17  selection of the arbitrator.  And it may come to pass,

14:44:17  18  your Honor, that RTA will say in this instance, well,

14:44:20  19  we're not going to use JAMS, and we refuse to do so,

14:44:23  20  because by doing so, we would have to submit the issue

14:44:26  21  of arbitrability to that party, and we won't do that.

14:44:28  22  And so we're not there.  That's not applicable.  And

14:44:30  23  again, it says you say, a second-tier agreement that we

14:44:34  24  haven't reached in this case.

14:44:35  25          So I think looking at the case in its most

14:44:39 1  simplistic terms, the Union has come forward and

14:44:43 2  categorized or, you know, it -- it said, this

14:44:47 3  discipline, the demotion, is not in accordance with the

14:44:49 4  contract. And RTA's response is a demotion is not

14:44:53 5  discipline. You're not challenging something that the

14:44:57 6  contract contains. There's no mention of that. You do

14:45:00 7  not have the right to challenge a demotion, but we do

14:45:03 8  have the right to administer a demotion through our

14:45:07 9  management rights clause, but even if you lopped off the

14:45:09 10  management rights argument that RTA makes, you would be

14:45:13 11  faced with a question of about have we -- you know, I

14:45:17 12  believe that you are the gatekeeper to deciding whether

14:45:20 13  or not this is arbitrable, but even if you were to find,

14:45:22 14  as I said, that there's a broad arbitration clause, the

14:45:25 15  presumption of arbitrability can be overcome in this

14:45:28 16  case by showing you that we have that clear and

14:45:31 17  unmistakable language that shows we have not agreed to

14:45:34 18  arbitrate a demotion.

14:45:37 19         THE COURT: So, if I were to find that

14:45:43 20  sentence in II(A), it is the understanding of both

14:45:47 21  parties that discipline is defined as written warnings,

14:45:50 22  suspensions and terminations, if I were to find that to

14:45:53 23  be ambiguous or unclear, it would follow, would it not,

14:45:58 24  that that's not clear and unmistakable evidence of a

14:46:04 25  carveout to the arbitration, so the end result would be

14:46:07 1 arbitration, right? In other words, if I can't tell --

14:46:11 2 MS. ROZAK: I think I would have to concur,

14:46:13 3 because I -- I -- I am urging you to find that that

14:46:17 4 sentence is clear and unambiguous; that that is the

14:46:23 5 universe of discipline, as the parties have agreed, at

14:46:28 6 least for this contract.

14:46:29 7 THE COURT: It could say, of course, if the

14:46:32 8 Union wants to read it -- it could say, discipline is

14:46:36 9 limited to A, B, and C, warnings, suspensions and

14:46:40 10 terminations, and no other form is permitted. It

14:46:42 11 doesn't say that.

14:46:43 12 MS. ROZAK: You are right, your Honor.

14:46:44 13 THE COURT: It could say as the company

14:46:46 14 wants, you know, the discipline is defined in this way,

14:46:49 15 and all other forms of employ -- you know, and it's only

14:46:52 16 A, B, and C, and all other forms of discipline are still

14:46:55 17 on the table as part of management rights.

14:46:57 18 MS. ROZAK: Yes, your Honor, I would agree

14:46:59 19 with that. But also, as you say, if you were to read

14:47:03 20 the contract, as the Union is urging you to, it is

14:47:07 21 missing the all important language that says, and

14:47:10 22 this -- you know, and you cannot administer any other

14:47:14 23 form of discipline, which is, you know, understood in

14:47:18 24 the general employer-employee rubric as including things

14:47:21 25 such as verbal warnings or demotions or --

14:47:27  1          THE COURT:  Well, verbal warnings is

14:47:29  2  mentioned.

14:47:30  3          MS. ROZAK:  Well, actually, you're right.

14:47:31  4  That is specifically mentioned as something that the

14:47:32  5  employer may do.  But we would have to then sit down and

14:47:36  6  think about other actions that could be perceived as

14:47:39  7  disciplinary in nature, and there are many that

14:47:42  8  employees view as disciplinary.

14:47:46  9          THE COURT:  Such as?

14:47:47  10          MS. ROZAK:  Well, as I stand here today, now

14:47:49  11  you have me stymied.  So let's see.  Actually, there are

14:47:56  12  a host of them, such as -- and I'm not sure if it works

14:48:00  13  in this setting, but as your hyperbole about painting

14:48:04  14  the bus pink, moving people's offices.  People find that

14:48:06  15  if they've had to move their office from the area where

14:48:08  16  all their friends are to someplace else, they have been

14:48:12  17  moved to Siberia, and that's disciplinary.  People who

14:48:16  18  have to change their lunch hour, that's disciplinary.

14:48:19  19  And you're disciplining me because, you know, I

14:48:21  20  complained about X, Y, Z.  Or a person is not allowed to

14:48:24  21  take a day of leave when that's in the discretion of

14:48:27  22  management, and they say, well, that is arguably

14:48:30  23  management's discretion, but management never says, no,

14:48:33  24  you can't take a day of vacation, and now that you're

14:48:37  25  denying me my leave, my vacation, that's disciplinary.

| | | |
|---|---|---|
| 14:48:40 | 1 | So we do start to get into the world of actions that the |
| 14:48:44 | 2 | Union or the individual employee would characterize as |
| 14:48:46 | 3 | disciplinary in nature, which the parties never ever |
| 14:48:51 | 4 | thought about when they sat down and negotiated the |
| 14:48:54 | 5 | contract and said, gee, you're right. I guess, you |
| 14:48:56 | 6 | know, if we do switch someone's time for lunch, or we do |
| 14:49:00 | 7 | deny their day of leave, or we do move their office to |
| 14:49:03 | 8 | another part of the, you know, building that somehow or |
| 14:49:05 | 9 | other that's been deemed disciplinary. So it's not just |
| 14:49:09 | 10 | a demotion. It's a whole host of other actions that |
| 14:49:12 | 11 | individuals would view as disciplinary to them. |
| 14:49:15 | 12 | THE COURT: All right. Mr. Goldberg, |
| 14:49:23 | 13 | anything further? |
| 14:49:25 | 14 | MR. GOLDBERG: Two -- two points, your |
| 14:49:27 | 15 | Honor. |
| 14:49:28 | 16 | It seems to me that the argument on behalf |
| 14:49:31 | 17 | of the RTA have been really trying to have form overcome |
| 14:49:39 | 18 | substance. You know, the argument where the issue in |
| 14:49:44 | 19 | terms of this subparagraph C under grievances that we |
| 14:49:47 | 20 | have to identify the specific section of the agreement |
| 14:49:51 | 21 | alleged to have been violated, well, reality -- that |
| 14:49:55 | 22 | doesn't really change all disputes because that's only |
| 14:49:58 | 23 | if those sections are actually known. And even in this |
| 14:50:02 | 24 | case, we have identified what that section was. It's an |
| 14:50:06 | 25 | issue involving discipline, whether or not that |

14:50:09  1   demotion, whether appropriate under the facts of this

14:50:12  2   case, and whether or not it falls within the collective

14:50:14  3   bargaining agreement.  Those are matters that are

14:50:16  4   typically reserved for arbitrators, which identified

14:50:21  5   several cases where arbitrators have ruled on that

14:50:23  6   particular issue itself.

14:50:24  7           But just a secondary note, when I was

14:50:28  8   talking to Attorney Rozak this morning, I noticed that

14:50:32  9   there was one of the exhibits of the complaint that I

14:50:35  10  believe was incorrect, and there was an Exhibit F that I

14:50:39  11  think was meant to be a different document, and I wanted

14:50:43  12  to have that offered.  And let me show it to counsel

14:50:47  13  first.

14:50:47  14          (Document shown to Ms. Rozak.)

14:50:47  15          MS. ROZAK:  Yeah, that's it.

14:50:47  16          MR. GOLDBERG:  Okay.  And this was the

14:51:12  17  actual Step 2 response to the grievance and should be

14:51:18  18  really placed as Exhibit F in the complaint.

14:51:22  19          I would just call the Judge's attention to

14:51:26  20  the last paragraph on the first page where it sure

14:51:29  21  appears at least on its face as part of the complaint

14:51:33  22  that there is this egregiousness of conduct that is so

14:51:38  23  severe that it could have been warranted for

14:51:40  24  termination, but in lieu it ended up being a demotion,

14:51:43  25  that they're using this demotion as a disciplinary tool.

14:51:48  1    And again that goes back to the arbitrators of whether

14:51:51  2    or not that is in a proper form of discipline in the

14:51:55  3    interpretation of that contract.

14:51:56  4              Thank you, your Honor.

14:51:58  5              THE COURT:  All right.  Let's mark the

14:52:06  6    June 14th, 2011, letter as Exhibit 1 to this hearing.

14:52:10  7              (Exhibit No. 1 was admitted into evidence.)

14:52:12  8              THE COURT:  Just give me a moment here.

14:52:59  9              All right.  I think, as I indicated, the

14:53:02  10   first question is the easier one, and that is whether

14:53:05  11   the Court or the arbitrator decides whether the claim is

14:53:07  12   arbitrable.  I think under the circumstances here, for a

14:53:11  13   reason set forth in the RTA's brief, clearly the matter

14:53:17  14   is for the Court.  It's not expressly or even appliedly

14:53:25  15   granted to the arbitrator under the circumstances

14:53:29  16   presented here.

14:53:30  17             And the JAMS rules, I think, are not

14:53:40  18   incorporated under the circumstances presented,

14:53:43  19   particularly when both parties have to mutually assent

14:53:46  20   to JAMS arbitration, rather than AAA arbitration.

14:53:50  21             The more difficult issue is whether the

14:53:53  22   substantive question is arbitrable.

14:53:57  23             I interpret III(A) as being a broad

14:54:04  24   presumption of arbitrability.  It says this grievous --

14:54:07  25   grievance procedure, which of course includes

14:54:09  1    arbitration, shall apply to all disputes arising between

14:54:12  2    the Union and the Company whether any such dispute

14:54:15  3    occurs as a result of a complaint by an individual

14:54:17  4    member of the Union or a complaint by the Union itself.

14:54:20  5              That leads to the question is it all

14:54:25  6    disputes arising between the Union and the Company, or

14:54:28  7    all disputes arising out of the CBA.  I think the answer

14:54:32  8    is the latter, that is, the grievance procedure, the

14:54:35  9    arbitration procedure applies to all disputes arising

14:54:38  10   out of the CBA.

14:54:39  11             It certainly -- again, this document could

14:54:43  12   be drafted a whole lot more clearly, to say the least,

14:54:48  13   but I think III(A), III(C) and I(A) taken together

14:54:53  14   clearly suggest that what is arbitrable are disputes

14:54:58  15   arising out of the CBA.  Otherwise, the management

14:55:04  16   rights withhold makes no sense among other things.

14:55:07  17             That takes us to the discipline clause.  It

14:55:13  18   could be read in a number of different ways.  The

14:55:22  19   Transit Authority says that it's a definition.  It

14:55:28  20   defines discipline to mean three different things:

14:55:31  21   Written warnings, suspensions, and terminations.  That's

14:55:34  22   the universe of discipline identified under the CBA, and

14:55:42  23   therefore, that's the universe of discipline to which

14:55:46  24   the grievance procedure and the arbitration rights

14:55:49  25   attach.

14:55:50  1          That is by no means a frivolous

14:55:54  2  interpretation.  The Union's interpretation is that this

14:56:05  3  is a limiting clause; that these are the only ways in

14:56:09  4  which discipline may be imposed, that is, written

14:56:12  5  warnings, suspensions or terminations.  It's meant to

14:56:15  6  confine the company.  That too is not a frivolous

14:56:22  7  definition.

14:56:24  8          There is a third interpretation in context,

14:56:28  9  which is that it's meant to emphasize that the

14:56:34  10  procedure, the disciplinary procedure and the grievance

14:56:37  11  procedure, does not apply to verbal warning and

14:56:39  12  cautions, but only to written warnings, suspensions and

14:56:43  13  terminations, and that the drafts -- drafters of the CBA

14:56:52  14  hadn't -- it hadn't occurred to them to mention

14:56:56  15  demotions, and that written warnings, suspensions and

14:57:00  16  terminations are meant as a -- as distinct from verbal

14:57:04  17  warnings or cautions to which the grievance procedure

14:57:07  18  doesn't apply.

14:57:07  19          The way out of this morass is by no means

14:57:14  20  clear to me, and I think under the circumstances the law

14:57:20  21  requires me to find that this dispute is arbitrable

14:57:25  22  because it isn't clear.  It isn't unmistakable.  It

14:57:31  23  isn't so definite or so forceful or so obvious that

14:57:37  24  it's -- that conclusion is required.

14:57:40  25          I do that with some misgivings, simply

14:57:47 1 because I'm struggling to figure out what the CBA

14:57:51 2 actually says or means.

14:57:54 3          And I certainly would have greater

14:57:58 4 confidence in my decision if I could say the document

14:58:00 5 clearly means X or Y or Z.  But it is susceptible of

14:58:07 6 different meanings, whether it's intended as a -- a list

14:58:11 7 of limitations as instructions and so on is -- is very

14:58:16 8 much up in the air; and therefore, because it's not

14:58:21 9 clear, because it's not unmistakable, I do think it's

14:58:25 10 subject to the grievance procedure.

14:58:28 11          And to state the obvious, I -- this is a

14:58:36 12 decision strictly about arbitrability.  I take no

14:58:40 13 position at all about whether anyone is acting in good

14:58:45 14 faith or not and whether or not Mr. Rossi had the

14:58:50 15 discipline coming to him that he received.  It's

14:58:53 16 strictly a question of -- of arbitrability; and

14:59:00 17 therefore, I'm compelled having found the dispute is

14:59:07 18 arbitrable to grant the motion to dismiss.

14:59:12 19          I guess, let me stop there.  In terms of the

14:59:24 20 granting of the motion, is there any residual

14:59:28 21 nonarbitrable piece of this that would -- where it would

14:59:31 22 make sense for me to retain jurisdiction or to stay the

14:59:35 23 proceedings pending arbitration?  I don't think anyone

14:59:35 24 asked for that.

14:59:37 25          Ms. Rozak, is this all-or-nothing?

14:59:38　1　　　　　　　MS. ROZAK:  I think this is all-or-nothing,

14:59:40　2　your Honor, correct.

14:59:40　3　　　　　　　THE COURT:  All right.  Mr. Goldberg, I take

14:59:42　4　it you agree?

14:59:43　5　　　　　　　MR. GOLDBERG:  I concur.

14:59:43　6　　　　　　　THE COURT:  All right.  All right.  Then I

14:59:45　7　will grant the motion to dismiss.  It -- I'm not picking

14:59:53　8　on any of you.  Probably this document goes back decades

14:59:57　9　and has been added to over the years, but it certainly

15:00:01　10　would help if documents such as this were written more

15:00:05　11　clearly so at least we would know what the parties had

15:00:07　12　intended and bargained for; but in any event, I have to

15:00:15　13　deal with what's in front of me and do the best I can

15:00:19　14　under the circumstances.

15:00:21　15　　　　　　　So, thank you.  It was well argued, but the

15:00:25　16　motion to dismiss is granted.

15:00:28　17　　　　　　　Okay.  Thank you.

15:00:30　18　　　　　　　(At 3:00 p.m., Court was adjourned.)

19

20

21

22

23

24

25

1                      C E R T I F I C A T E

2

3          I, Marianne Kusa-Ryll, RDR, CRR, do hereby

4    certify that the foregoing transcript, consisting of 28

5    pages inclusive, is a true and accurate transcription of

6    my stenographic notes in Case No. 11cv40222, Regional

7    Transit Authority Transit Services versus Amalgamated

8    Transit Union, Local 22, before F. Dennis Saylor, IV, on

9    February 13, 2012, to the best of my skill, knowledge,

10   and ability.

11

12

13   /s/ Marianne Kusa-Ryll              2/16/12

14   Marianne Kusa-Ryll, RDR, CRR           Date

15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25